**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Mackenzie L. Steen,<br><br>   Plaintiff.<br><br>  v.<br><br>Daniel P. Driscoll,<br>in His Official Capacity As<br>the Secretary of the Army<br><br>   Defendant. | ) <br>) <br>) <br>) <br>) **COMPLAINT**<br>) <br>) **Case No.:**<br>) <br>) <br>) <br>) <br>) <br>) |

**COMPLAINT**

**Nature and Summary of Action**

1. Plaintiff Mackenzie L. Steen files this action against Defendant Daniel P. Driscoll, in his official capacity as the Secretary of the Army, seeking equitable and declaratory relief under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.,* from his unlawful discharge from the North Dakota Army National Guard in 2024 and a decision by the Army Board for Correction of Military Records ("ABCMR") in 2026 erroneously failing to remedy that unlawful discharge.

2. Mr. Steen was wrongfully separated from the North Dakota Army National Guard on March 31, 2024 after an Army Physical Evaluation Board and the U.S. Army Physical Disability Agency concluded that functional activity limitations associated with his right hip osteoarthritis – based exclusively on his condition as of June 2021 – rendered him unfit due to his inability to perform his military duties.

1

3.  In finding Mr. Steen unfit, the Physical Evaluation Board and Physical Disability Agency disregarded substantial contrary evidence that Mr. Steen was fit and could perform his military duties, including statements from two company commanders and three senior non-commissioned officers who supervised Mr. Steen as well as multiple non-commissioned officer evaluation reports from 2019 to 2023 that rated Mr. Steen as meeting fitness and other military standards.  The Physical Evaluation Board and Physical Disability Agency similarly disregarded a September 2023 assessment by Mr. Steen's orthopedic medical provider that determined his right hip osteoarthritis no longer necessitated any of the functional activity limitations imposed previously and that he could continue to serve without medical risk.

4.  The Physical Disability Agency denied Mr. Steen's request made in November 2023, to appeal the Physical Evaluation Board's finding of unfitness at an in-person hearing pursuant to a Department of Defense regulation that went into effect in November 2022, because the Army had yet to implement the appellate procedures necessary to comply with the Department of Defense regulatory mandate.  By disregarding substantial contrary evidence and denying Mr. Steen a material procedural right to an in-person appellate hearing, the Physical Evaluation Board and the U.S. Army Physical Disability Agency caused Mr. Steen's medical discharge for unfitness to be invalid and void.

5.  On May 3, 2026, the ABCMR denied Mr. Steen's application requesting that the errors and injustice committed by the Physical Evaluation Board and the

Physical Disability Agency be corrected to reflect that he was not discharged and remained a drilling member of the North Dakota Army National Guard on March 31, 2024.  Recognizing the compelling evidence that Mr. Steen was more than able to perform his military duties despite his osteoarthritis, the ABCMR pivoted to a new rationale for finding no error or injustice with the prior unfitness determination.  Adopting the opinion of its in-house medical advisor, who relied on hip-related functional activity limitations relating exclusively to Mr. Steen's condition as of June 2021, the ABCMR concluded that Mr. Steen's continued service represented a decided medical risk to his health and the welfare of other soldiers. The ABCMR also concluded that denying Mr. Steen the in-person hearing he requested to appeal the Physical Evaluation Board's finding of unfitness was not error, because the Army had not established the appeal procedures mandated by the Department of Defense.

6.  The ABCMR decision was arbitrary, capricious, and an abuse of discretion or otherwise not in accordance with law and was made without observance of procedure required by law.  The U.S. Army Physical Disability Agency and the ABCMR were obligated to comply with the Department of Defense regulation requiring the in-person hearing Mr. Steen requested to appeal the Physical Evaluation Board's finding of unfitness.  Denying Mr. Steen a material procedural right to an in-person hearing was clear error that could not be excused by the Army's own procedural failures to comply with a Department of Defense regulation.

7. The ABCMR offered no rationale or explanation for why it adopted its in-house medical advisor's opinion and disregarded the contrary medical assessments of two orthopedic medical providers in 2023 and in 2024, that Mr. Steen's hip condition no longer required any functional limitations and he could continue to serve without risk. As a result, the ABCMR erroneously failed to furnish a rational connection between the conflicting facts in the record before it regarding the nature and extent of the medical risk to Mr. Steen's health posed by continued service without functional activity limitations and the choice the ABCMR made that such continued service was a decided medical risk.

8. Mr. Steen submits he is entitled to a judgment against defendant and requests that the Court (a) declare that Mr. Steen's discharge from the North Dakota Army National Guard and the ABCMR decision were arbitrary, capricious, and an abuse of discretion or otherwise not in accordance with law or were without observance of procedure required by law; (b) vacate Mr. Steen's discharge from the North Dakota Army National Guard and the ABCMR decision; and (c) remand the case to defendant for referral to the ABCMR or another Army component consistent with the Court's decision and entry of judgment for a determination of his fitness as of March 31, 2024.

## The Parties

9. Plaintiff Mackenzie L. Steen, a former non-commissioned officer in the North Dakota Army National Guard, is a resident of West Fargo, Cass County, North Dakota.

4

10.  Defendant Daniel P. Driscoll is the Secretary of the Army and the head of the Department of the Army under 10 U.S.C. § 7013, and has served in that position continuously since February 25, 2025.  Under 10 U.S.C. § 7011, the Department of the Army is a separately organized military department under the authority, direction, and control of the Secretary of Defense.

### Jurisdiction and Venue

11.  This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, because they raise federal questions under the laws governing the retention or separation of a member of the Army or Army National Guard who has a medical condition and the Administrative Procedure Act. 10 U.S.C. §§ 1201, 1203–1204, 1206, 1216; 5 U.S.C. §§ 701–706.

12. Plaintiff seeks exclusively declaratory and other equitable relief.  5 U.S.C. § 702.

13.  The decision by the ABCMR denying Plaintiff relief constitutes final agency action for which there is no other adequate remedy in a court.  5 U.S.C. § 704.

14.  Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1)(C), because defendant is an officer or employee of the United States or an agency thereof acting in his official capacity and Plaintiff resides in this judicial district and there is no real property involved in the action.  Venue is also proper under 5 U.S.C. § 703, because this is a court of competent jurisdiction.

**Factual Allegations**

The Army Disability Evaluation System

15.  The Secretary of the Army has authority to retire or separate a soldier serving in an active or reserve component of the Army, including the Army National Guard, who is found unfit to perform the duties of the soldier's office, grade, rank, or rating because of physical disability. 10 U.S.C. §§ 1201, 1203-1204, 1206, 1216. The Secretary's statutory authority is subject to and implemented by Department of Defense Instruction ("DoDI") 1332.18, *Disability Evaluation System* (Nov. 10, 2022) and Army Regulation ("Army Reg.") 635-40, *Disability Evaluation for Retention, Retirement, or Separation* (Jan. 19, 2017), the versions of the regulations applicable to Mr. Steen's medical separation.

16.  If it is determined that a member of the Army Reserve or the Army National Guard has a medical condition that does not meet Army medical retention standards and was neither incurred nor aggravated in the line of duty during a period of active duty service more than 30 days, the soldier upon request is referred to an Army Physical Evaluation Board ("PEB").  DoDI 1332.18, ¶ 3.d; Army Reg. 635-40, ¶ 4-34.  The PEB determines whether the soldier is fit for duty and whether the condition is duty related.  *Id.*

17.  The PEB will consider a soldier unfit when the preponderance of evidence establishes that the soldier, due to disability, is unable to reasonably perform the duties of their office, grade, rank, or rating.  DoDI 1332.18, ¶ 6.2; Army Reg. 635-40, ¶ 5-1.  Alternatively, a soldier may be found unfit if (a) a medical

6

condition represents a decided medical risk to the health of the soldier or to the welfare of other soldiers were the soldier to continue on active duty or in an active Reserve status, or (b) a medical condition imposes unreasonable requirements on the Army to maintain or protect the soldier.   DoDI 1332.18, ¶ 6.2; Army Reg. 635-40, ¶ 5-3.

18.  In determining whether a soldier can reasonably perform their duties, a PEB must consider: (a) whether the soldier can perform the common military tasks required for their office, grade, rank, or rating such as routinely firing a weapon, performing field duty, or wearing load-bearing equipment or protective gear – or any of the functional tasks listed on DA Form 3349, Physical Profile Record;  (b) whether the soldier is medically prohibited from taking the Army Physical Fitness Test; and (c) whether the soldier is deployable individually or as part of a unit, with or without prior notification, to any location specified by the Army.  DoDI 1332.18, ¶ 6.4; Army Reg. 635-40, ¶ 5-4.

19.  Army Directive 2024-01 (Army Fitness Determinations and Deployability) dated February 9, 2024, revised Army Reg. 635-40, ¶ 5-4, to require a PEB to consider multiple criteria in making a fitness determination with no one factor being dispositive, including in pertinent part:  (a) does the nonmedical record, including, but not limited to, letters, personal testimony, and/or evaluation reports, support that the Soldier can reasonably perform the duties of the office, grade, or rank? (b) is the soldier's medical condition well controlled such that it is not currently a decided medical risk to the soldier's health or the welfare of other

7

soldiers? (c) can the soldier's environment be controlled to prevent exacerbating existing medical conditions without imposing on the Army unreasonable requirements to maintain or protect the soldier? (d) does the soldier's medical condition make it unlikely the soldier would receive a medical waiver to deploy to a Combatant Command Area of Responsibility?

20.  Army Reg. 635-40, ¶ 5-6.a., mandates that if evidence of a soldier's fitness is not clear, further investigation to resolve the doubt will be made and that benefit of the doubt will be resolved in favor of fitness.  Paragraph 5-6.d.(1) requires that letters of support, evaluation reports, or personal testimony regarding a soldier's ability to perform their duties should be afforded great probative weight in determining fitness for duty in the case of a chronic condition such as osteoarthritis. ("When a Soldier is referred for physical disability evaluation for a medical impairment of a chronic nature … evaluation of the Soldier's performance of duty by supervisors as indicated, for example, by letters, evaluation reports … or personal testimony, may provide better evidence than a clinical estimate by a physician of the Soldier's ability to perform their duties. Particularly in cases of chronic illness, these documents may be expected to reflect accurately a Soldier's capacity to perform.")

21.  A soldier's case is initially adjudicated through a document review by an Informal PEB without a hearing.  DoDI 1332.18, ¶ 3.3.b.; Army Reg. 635-40, ¶ 4-22. If dissatisfied with the Informal PEB's decision, the soldier may request a hearing before a Formal PEB.  DoDI 1332.18, ¶ 3.3.c.; Army Reg. 635-40, ¶ 4-23. 4-24.  In

8

November 2023, a soldier was permitted to submit a written appeal of the decision of a Formal PEB to the U.S. Army Physical Disability Agency.  Army Reg. 635-40, ¶¶ 4-25.a.(2), 4-25.l.; Army Directive 2021-05 (Integrated Disability Evaluation System) (Mar. 16, 2021), ¶ 4.f.

22.   Effective November 10, 2022, the Department of Defense ("DoD") required each of the military departments, including the Army, to provide a soldier with an in-person hearing upon request to appeal the decision of a Formal PEB. DoDI 1332.18, ¶ 3.3.(d)(1), implementing the National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 524, 135 Stat. 1541, 1687 (Dec. 27, 2021), codified at 10 U.S.C. § 1071 note.  Despite the directive language of DoDI 1332.18, the Army denied an in-person hearing to appeal a Formal PEB decision requested by a soldier until June 24, 2024, when it issued Army Directive 2024-06 (Soldier Appeal of the Formal Physical Evaluation Board Findings and Recommendations).

23.  A soldier who believes that there was an error or injustice with the Army's final adjudication of their disability proceedings may seek relief at the Army Board for Correction of Military Records ("ABCMR").  10 U.S.C. § 1552; 32 C.F.R. § 581.3.  Acting through the ABCMR, which is comprised of civilians from the Department of the Army, the Secretary of the Army may correct any Army record when considered necessary to correct an error or remove an injustice.  10 U.S.C. § 1552(a)(1).  When the ABCMR fails to correct an error or remove an injustice clearly presented in the record, it violates its statutory mandate under 10 U.S.C. § 1552 and its decision is arbitrary and capricious.

Mr. Steen's Medical Separation Under the Army Disability Evaluation System

24. On March 28, 2011, Mr. Steen enlisted in the North Dakota Army National Guard ("NDARNG"). Mr. Steen's military occupational specialty was 88M, motor transport operator. Mr. Steen served successfully in a variety of positions of increasing responsibility within the NDARNG leading to his promotion to staff sergeant (E-6) on September 2, 2020.

25. On December 2, 2020, Mr. Steen underwent an arthroscopic surgical procedure to address osteoarthritis in his right hip. On June 21, 2021, his orthopedic surgeon, Dr. Benjamin Noonan of Sanford Orthopedics and Sports Medicine, examined Mr. Steen and determined that his hip condition at that time necessitated limitations on "high intensity strenuous exercise."

26. Beginning in June 2021, Dr. Noonan made multiple attempts to complete a NDARNG profile assessment form for Mr. Steen at the request of the NDARNG, based exclusively on his assessment of Mr. Steen's hip condition as it existed in June 2021. After multiple months of bureaucratic back and forth, Dr. Noonan's profile assessment form was finally accepted by the NDARNG in November 2021. The profile assessment form remained exclusively based on Mr. Steen's hip condition as of June 2021. Based on Dr. Noonan's profile assessment form, the Army on August 14, 2022, issued a DA Form 3349, Physical Profile Record ("Profile"), which imposed on Mr. Steen functional activity limitations due to his right hip osteoarthritis. The Profile for his lower extremities reflected that Mr. Steen was unable to "wear helmet, body armor, and load bearing equipment (LBE)

without worsening his condition" and unable to "move greater than 40 lbs (e.g. duffle bag) while wearing usual protective gear (helmet, weapon, body armor, LBE) up to 100 yards." The Profile did not place any functional limitation on Mr. Steen's deployability, as it did not indicate that Mr. Steen could not "live and function, without restrictions in any geographic or climatic area without worsening condition."

27. Mr. Steen's hip condition significantly improved by 2023, as reflected by a profile assessment form and progress notes of a medical evaluation completed by Mr. Steen's orthopedic medical provider, Joshua Voth, Physician's Assistant – Certified ("PA-C"), who practiced under the supervision of Dr. Noonan in the Sanford Orthopedics and Sports Medicine practice. On an NDARNG profile assessment form dated September 22, 2023, Mr. Voth indicated that Mr. Steen had no functional limitations due to his hip condition, including no limitation on wearing his helmet, body armor, and LBE without worsening his condition and no limitation on moving greater than 40 pounds while wearing usual protective gear up to 100 yards.

28. In the progress notes dated September 22, 2023, which included an examination and review of x-rays, Mr. Voth noted that Mr. Steen "is doing really well in regards to his right hip" despite having "substantial bipolar arthritic changes." Mr. Voth concluded that Mr. Steen's condition did not require any limitations on his physical activity: "I went through his military profile with him today. I do not think he really has any limitations on anything at this point. He can

pretty much perform activities as tolerated … At this point I think he is cleared to perform activities as tolerated in the military." Mr. Voth's conclusion that Mr. Steen no longer required any functional activity limitations was made with the full recognition that Mr. Steen could "expect waxing and waning of symptoms with progressive cartilage degeneration over time" and that "[u]ltimately at some point in his life he will require total hip arthroplasty."

29.  On February 8, 2024, Mr. Steen sought a second opinion and was examined by Ryan Kessel, PA-C Orthopedics from the Essentia Health practice. Mr. Kessel independently reviewed Mr. Steen's chart and x-rays from the Sanford Orthopedics and Sports Medicine practice. Mr. Kessel concluded, consistent with Mr. Voth's prior conclusion, that despite progressive osteoarthritis which would require hip replacement surgery at an undetermined date in the future, Mr. Steen required no functional activity limitations and "can run jump and progress as comfortable either within normal activity as well as in the military with no restrictions."

30.  Both before and after his arthroscopic surgical procedure and despite his osteoarthritis, Mr. Steen continued successfully to perform his military duties as a motor transport operator and non-commissioned officer. Mr. Steen's three non-commissioned officer evaluation reports from October 2019 to April 20, 2023, indicated that he met or exceeded standard with regard to fitness and that his performance of all assigned tasks was outstanding. A Service School Academic Evaluation Report in 2022 reflected that Mr. Steen successfully completed the

12

Motor Transport Operator Course and met standards as to fitness.  Statements from two of Mr. Steen's company commanders and three of his supervising senior non-commissioned officers in his military unit in 2022 and 2023, indicated that Mr. Steen's hip condition did not prevent him from performing his military duties at or above standard either in the United States or outside the United States on deployment and that he was deployable.

31.  On May 17, 2022, the State Surgeon notified Mr. Steen that the NDARNG intended to separate him because his osteoarthritis was a non-duty related medical condition that failed to meet medical retention standards.  Mr. Steen elected to have his case reviewed by a non-duty related PEB, which would determine only whether he was fit for duty and whether the condition was duty related.  On August 11, 2022, the NDARNG referred Mr. Steen's case to the U.S. Army Physical Disability Agency ("USAPDA"), a component of the U.S. Army Human Resources Command, which was responsible for PEB adjudications.

32.  On September 19, 2022, an Informal PEB determined that Mr. Steen was unfit for duty due to his osteoarthritis based solely on the functional activity limitations of his Profile.  Mr. Steen indicated that he did not concur and requested a hearing before a Formal PEB.  Mr. Steen attached a written appeal indicating that his hip condition had improved since his surgery in 2020, that he believed a reassessment would lift his profile limitations, and that he was able to perform the duties of his 88M military occupational specialty, motor transport operator.

33.  Mr. Steen submitted a contention memorandum to the Formal PEB dated October 18, 2023, in which he contended that he should be found fit.  Mr. Steen submitted Mr. Voth's profile assessment and medical progress notes indicating that Mr. Steen had no functional activity limitations due to his hip condition, including no limitation on wearing his helmet, body armor, and load bearing equipment without worsening his condition and no limitation on moving greater than 40 pounds while wearing usual protective gear up to 100 yards.

34.  As reflected on a DA Form 199-1, Formal PEB Proceedings, dated October 19, 2023, following an on-line hearing, the PEB found Mr. Steen unfit due to his right hip osteoarthritis.  The PEB acknowledged that Mr. Steen could perform his military duties within the United States.  But the PEB concluded that "in a deployed/austere environment" Mr. Steen's service would pose a risk to him because, consistent with his Profile, he could not perform his military duties by being unable to "wear helmet, body armor, and load bearing equipment (LBE) without worsening his condition" and being unable to "move greater than 40 pounds while wearing usual protective gear (helmet, weapon, body armor, LBE) up to 100 yards.

35.  By memorandum dated November 6, 2023 submitted to the USAPDA, Mr. Steen requested an in-person hearing to appeal the Formal PEB determination as required by DoDI 1332.18 (Nov. 10, 2022), ¶ 3.3.d.(1), implementing § 524 of the Fiscal Year 2021 National Defense Authorization Act.  Mr. Steen stated:  "This

request for an in-person hearing is not intended to be a written appeal in lieu of a hearing."

36. On November 13, 2023, the USAPDA returned Mr. Steen's case to the PEB to consider the September 22, 2023 profile assessment and progress notes of Mr. Voth and the letters of support from Mr. Steen's commanders, training non-commissioned officer, and platoon sergeant. The USAPDA stated: "In view of this additional evidence and the fact that there is no record that the NDARNG Surgeon reviewed the submitted 'Profile Assessment', we would like for the PEB to consider returning the case to the NDARNG for possible profile revision."

37. On November 30, 2023, the PEB declined to revisit its determination. The PEB did not address returning the case to the NDARNG, but otherwise relied on the functional activity limitations in Mr. Steen's Profile and the severity of his osteoarthritis, as described by Dr. Noonan in 2020 prior to Mr. Steen's arthroscopic procedure, to conclude that Mr. Steen could not reasonably perform his military duties. The PEB ignored Mr. Voth's profile assessment form and incorrectly asserted that Mr. Voth had failed to directly address the functional activity limitations. The PEB did not address the letters from Mr. Steen's unit personnel attesting to his ability to reasonably perform his military duties and to deploy.

38. On December 1, 2023, the USAPDA summarized the PEB's response and stated: "Given the PEBs response, we are unable to conclude differently and find that he remains unfit for his right hip osteoarthritis condition." The USAPDA further stated that Mr. Steen would not receive his requested in-person hearing to

15

appeal the Formal PEB determination because the Army had yet to establish an implementing procedure. The USAPDA indicated that its "extensive review of the case file" and Mr. Steen's appeal were sufficient and that if Mr. Steen disagreed, "he will need to make any future submission for correction to the Army Board for Correction of Military Records."

39. In a memorandum to the USAPDA dated December 18, 2023, Mr. Steen repeated his request for an in-person hearing to appeal the Formal PEB determination of unfitness. Mr. Steen noted that his prior request for an in-person hearing expressly stated that it was not to be construed as a written appeal of the Formal PEB determination. Mr. Steen requested that the processing of his case be suspended until the Army complied with DoDI 1332.18 by establishing its in-person hearing procedures.

40. Mr. Steen was separated from the NDARNG effective March 31, 2024, with an Honorable discharge, by Orders 0007830164, dated April 12, 2024.

Mr. Steen's Application to the Army Board for Correction of Military Records

41. Mr. Steen submitted to the ABCMR an application for relief on a DD Form 149 dated May 15, 2024, with attachments. Mr. Steen requested that the ABCMR correct his military records to reflect that he remained a drilling member of the NDARNG to remedy the error or injustice arising from the flawed determination by the PEB and USAPDA that he was unfit for duty due to osteoarthritis in his right hip.

16

42. Mr. Steen's application explained that the preponderance of the evidence established that despite his right hip osteoarthritis, he was able to reasonably perform his military duties such that he was fit for continued duty. Mr. Steen noted that two company commanders, a unit training non-commissioned officer, and a platoon sergeant stated that he was able to perform his military duties and the duties of his 88M military occupational specialty, motor transport operator, and that he was fully deployable. Three non-commissioned officer evaluation reports and an academic evaluation report similarly concluded Mr. Steen was fit and performed the duties of his 88M MOS to standard. Mr. Steen pointed out that contrary to the Profile issued in August 2022, which was based exclusively on Mr. Steen's medical condition as of June 2021, Mr. Steen's treating medical provider, Mr. Voth, concluded in September 2023, that his medical condition had improved to the extent that he no longer had any functional activity limitations with regard to his military duties and that his prior Profile required modification to reflect no restrictions.

43. Mr. Steen contended that the PEB committed a further error or injustice by failing to resolve reasonable doubt in favor of fitness by refusing to return his case to the NDARNG for further investigation and a possible profile revision in violation of Army Reg. 635-40, ¶ 5-6.a. The USAPDA committed additional material error or injustice by refusing to grant Mr. Steen's request for an in-person hearing to appeal the findings of the Formal PEB, as required by DoDI 1332.18 (Nov. 10, 2022), ¶ 3.3.d.(1).

44. In an ABCMR Record of Proceedings AR20240010049, dated January 21, 2026, transmitted to Mr. Steen by letter dated May 3, 2026, the ABCMR denied Mr. Steen's application for relief. Relying on a medical review of the case by the Army Review Boards Agency medical advisor, the ABCMR summarily concluded that Mr. Steen's osteoarthritis of the right hip was unfitting because the condition was worsening and Mr. Steen's "condition posed a significant risk to his health and the welfare of other Soldiers, particularly in deployed or austere environments."

45. The medical advisor stated that Mr. Steen's "load limiting" Profile, although it prevented him from performing his military duties, was required "to lessen symptoms and to prolong the life of his native right hip as long as possible especially given his age." Absent the Profile, the medical advisor "reasonably anticipated" that Mr. Steen's right hip condition would "suffer greater/faster deterioration" in the United States and "even more so if exposed to the increased physical demands associated with combat deployment." Accordingly, the medical advisor concluded that Mr. Steen's right hip osteoarthritis "represents a decided medical risk to the health of the Soldier or to the welfare of other Soldiers were the Soldier to remain in service."

46. The ABCMR decision concluded that it was not error for the USAPDA to deny Mr. Steen an in-person hearing to appeal the Formal PEB determination of unfitness, because "denial of an in-person hearing was due to the absence of finalized procedures for such appeals at the time of the applicant's case" and "the USAPDA conducted a written appellate review of the applicant's case, which was

18

deemed sufficient and compliant with existing regulations." Accordingly, the ABCMR stated that it "concurred with the USAPDA determination that the applicant's case was properly adjudicated and found no evidence of procedural error or injustice."

### Claims for Relief

### Count I

### (Violation of the APA, 5 U.S.C. § 706(2)(A) (Arbitrary and Capricious, Abuse of Discretion); 5 U.S.C. § 706(D) (Agency Action Without Observance of Procedure Required by Law))

47. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth in their entirety.

48. In his ABCMR application, Mr. Steen argued that the USAPDA unlawfully denied his material procedural right to an in-person hearing to appeal the Formal PEB determination that he was unfit, as required by DoDI 1332.18 (Nov. 10, 2022), ¶ 3.3.d.(1). The ABCMR decision erroneously concluded that it was not error to deny Mr. Steen that in-person hearing because the Army had no appeal procedures in place and the USAPDA review of Mr. Steen's case was sufficient and compliant with existing regulations. Mr. Steen's discharge from the NDARNG and the ABCMR decision were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and were agency action without observance of procedure required by law.

49. On November 6, 2023, when Mr. Steen submitted his initial request, DoDI 1332.18 unequivocally required the Army to provide him upon his request

with an in-person Formal PEB appellate hearing.  The Army's lethargy in failing to comply with this mandatory DoD obligation offered no legal refuge for its flagrant defiance of a controlling DoD regulation.  The USAPDA's knowing and willful violation of an express DoD regulatory requirement – one central to the integrity of Mr. Steen's separation process – was clear error, which rendered his discharge from the NDARNG invalid and void and which the ABCMR was required but arbitrarily and capriciously failed to correct or remedy.

50.  The requirement for an in-person hearing to appeal a Formal PEB decision was added by the National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 524, 135 Stat. 1541, 1687 (Dec. 27, 2021).  Section 524 of the Act was implemented effective November 10, 2022, by DoDI 1332.18, ¶ 3.3.d.(1), which provides in pertinent part:

> Upon the Service member's decision to appeal the FPEB fitness determination, the Secretary of the Military Department concerned will ensure their respective Military Department has procedures to:
>
> (1) Inform Service members that they are entitled to appeal their FPEB fitness for duty determinations to the official designated by the Secretary of the Military Department concerned as the FPEB appellate authority. A Service member may submit the appeal in writing or, if requested by the Service member, a hearing will be conducted and the Service member will have the option to be represented at the hearing by legal counsel. The Service member will make election whether to present a FPEB appeal in a reasonable timeframe specified by Military Department regulations and consistent with other similar processes.

51.  DoDI 1332.18 plainly directed that upon Mr. Steen's "decision to appeal the FPEB fitness determination" defendant "*will ensure*" that the Department of the Army "has procedures" for a soldier to appeal their FPEB fitness decision at a

hearing if requested by the soldier (emphasis added). The Army was bound by this directive language in DoDI 1332.18, and the Army violated the DoD regulatory command when it failed to provide Mr. Steen with an in-person, appellate hearing upon his request. It is black letter law that the Army is bound by DoD's and its own regulations. As is the case with Mr. Steen, when the Army seeks to separate or discharge a soldier in violation of applicable regulations, the separation or discharge is invalid or void. A discharge resulting from the military's failure to comply with its procedures remains unlawful where the procedural error is not deemed "harmless" because the regulatory violation substantially affected the outcome of the matter.

52. The ABCMR identified no legitimate justification for the Army's disregard of DoDI 1332.18's obligatory in-person appellate hearing requirement, falling back on the fanciful proposition that its own procedural shortcomings were an acceptable basis to deny Mr. Steen a material procedural safeguard. Nothing compelled the USAPDA from proceeding with Mr. Steen's case in the absence of a hearing. The USAPDA had available to it alternative courses of action that were not unlawful. Nearly a year after DoD mandated appellate hearings in November 2022, when Mr. Steen requested an in-person, Formal PEB appellate hearing on November 6, 2023 and again on December 18, 2023, the USAPDA had a choice. The USAPDA could have opted to comply with the law and to suspend Mr. Steen's disability proceedings until such time as the Army put in place the mandatory Formal PEB appellate procedures. Alternatively, USAPDA could have changed the

21

PEB's finding of unfit to fit, returned the case to the PEB, or returned the case directly to the NDARNG rather than through the PEB for a profile review.

53. Instead, the USAPDA opted to proceed with Mr. Steen's case without an in-person, appellate hearing in clear violation of DoD 1332.18. In eschewing multiple alternative lawful courses of action, the USAPDA knowingly and willfully violated DoDI 1332.18, ¶ 3.3.d.(1) by denying Mr. Steen a material procedural protection consisting of an in-person, appellate hearing. That flagrant procedural violation constituted legal error, and the resulting discharge of Mr. Steen from the NDARNG together with the ABCMR's refusal to correct it were arbitrary and capricious, an abuse of discretion, and contrary to law.

54. The USAPDA's violation of DoDI 1332.18 and the ABCMR decision's failure to remedy that violation were not harmless. Mr. Steen was prejudiced by the USAPDA failure to grant him the appellate hearing to which he was entitled because the absence of that hearing substantially affected the outcome of his disability proceedings and his separation from the NDARNG, as a hearing may very well have resulted in a finding that he was fit. The ABCMR validation of the USAPDA's attempt to justify no hearing based on its consideration of what USAPDA characterized as a written appeal was contrary to the record facts. Mr. Steen expressly stated that his "request for an in-person hearing is not intended to be a written appeal in lieu of a hearing" in his November 6, 2023 request for a hearing and again in his December 18, 2023 request.

55. It was error for the ABCMR decision to conflate Mr. Steen's right to a written appeal to USAPDA with the new right to in-person appellate hearing mandated by DoDI 1332.18, ¶ 3.3.d.(1). *See* AR 635-40, ¶¶ 4-25.a.(2), 4-25.l.; Army Directive 2021-05 (Integrated Disability Evaluation System) (Mar. 16, 2021), ¶ 4.f. The parameters of the new appellate in-person hearing under DoDI 1332.18 were beyond the scope of a written appeal to the USAPDA and the outcome of an in-person appellate hearing may have resulted in a successful outcome for Mr. Steen than from a written appeal to USAPDA. It is impossible to determine without speculation what the appellate authority deciding the separate appeal after an in-person hearing would have considered relevant and how consideration of Mr. Steen's arguments would have affected the discretionary decision of the appellate authority as to whether the Formal PEB determination of unfitness should be reversed.

56. The necessity of such speculation demonstrates that the USAPDA's and ABCMR decision's errors in denying Mr. Steen an in-person appellate hearing cannot be excused as "harmless" because the nature of the errors precludes a reviewing body from assessing the magnitude of their effect on the outcome of the appellate decision. Similar speculation would be required regarding the outcome of the appellate hearing where the appellate authority would be comprised of individuals viewing the issues with unbiased fresh eyes, unlike the individuals at the USAPDA who had already reviewed Mr. Steen's case and had made up their minds that the Formal PEB determination was proper. Mr. Steen was prejudiced

by not having his case heard *de novo* by a second appellate authority untainted by an adverse prior determination made by the USAPDA.

57.  The refusal to grant Mr. Steen an in-person, appellate hearing prejudiced him by denying him the substantive right and opportunity to allow the appellate authority to observe his demeanor, credibility, physical condition, and military bearing and to hear directly from him regarding his ability to perform his military duties or about the extent to which his osteoarthritis did not pose a decided medical risk to his health or to the welfare of others.  The absence of an in-person hearing denied Mr. Steen the opportunity to respond in real time directly to any questions or concerns that the appellate authority might have to convince them that he was fit for duty.

58.  The error arising from the USAPDA's refusal to provide Mr. Steen with an in-person, appellate hearing and the ABCMR decision's refusal to correct that error was not cured by a *de novo* review by the ABCMR, because the ABCMR standard of review was more burdensome for Mr. Steen to meet than the burden he would have had at an in-person appellate hearing.  At the appellate hearing, Mr. Steen would have to demonstrate that the preponderance of the evidence supported his argument that the Formal PEB determination was erroneous.  Before the ABCMR, although a preponderance standard of proof applied, Mr. Steen was additionally required to overcome the presumption of administrative regularity the ABCMR applies to challenged decisions under 32 C.F.R. § 581.3(e)(2).  Mr. Steen

would have faced no such presumption of administrative regularity in his appeal of the Formal PEB determination pursuant to DoDI 1332.18.

59. Under the APA, this Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, and [an] abuse of discretion or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Plaintiff is therefore entitled to the relief requested in this Complaint.

## Count II

### (Violation of the APA, 5 U.S.C. § 706(2)(A) (Arbitrary and Capricious, Abuse of Discretion); 5 U.S.C. § 706(D) (Agency Action Without Observance of Procedure Required by Law))

60. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if set forth in their entirety.

61. Despite substantial evidence demonstrating that by 2023, Mr. Steen's osteoarthritis no longer required functional activity limitations and he was fit to continue serving in the NDARNG without medical risk, the ABCMR adopted the opinion of its in-house medical advisor and determined that Mr. Steen's continued service posed a decided medical risk to his health and to the welfare of others. The ABCMR decision relied on an outdated Profile relating to the status of Mr. Steen's osteoarthritis as of June 2021, without providing any basis, reason, or explanation for why it rejected or did not find persuasive the contrary medical assessments in 2023 and 2024 by Mr. Voth and Mr. Kessel. The ABCMR decision also disregarded

the provisions of Army Reg. 635-40 requiring resolution of doubt in favor of fitness, relied on stale evidence from 2021 rather than the most relevant snapshot of Mr. Steen's condition in 2023 and 2024 closer to the time of his separation, and failed to provide any rational basis for its conclusion that Mr. Steen's continued service represented a medical risk to himself or others.  As a result, the ABCMR's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and was agency action without observance of procedure required by law.

62.  On June 21, 2021, about six months after his arthroscopic hip procedure, Mr. Steen's surgeon, Dr. Noonan, determined that Mr. Steen's hip condition at that time necessitated limitations on "high intensity strenuous exercise."  That assessment led the Army on August 14, 2022, to issue a Profile exclusively based on Dr. Noonan's June 2021 assessment, that imposed functional activity limitations on Mr. Steen precluding him from wearing Army protective gear and moving 40 pounds up to 100 yards.

63.  By September 2023, Mr. Steen's hip condition had sufficiently improved to cause Mr. Voth, PA-C Orthopedics, who was in the same medical practice as and under the supervision of Dr. Noonan, to conclude that the Profile's functional activity limitations were no longer required.  Mr. Voth's medical opinion recognized but did not view as a medical risk to Mr. Steen's health the natural course of cartilage degeneration that was expected to progress regardless of whether the restrictions remained, as well as Mr. Steen's need for a right hip replacement at an unknown future date.  Mr. Voth's opinion was confirmed in February 2024 in a

26

second opinion by Ryan Kessel, PA-C Orthopedics, who concluded that despite progressive osteoarthritis eventually requiring hip replacement surgery, Mr. Steen required no functional activity limitations and "can run jump and progress as comfortable either within normal activity as well as in the military with no restrictions" without medical risk.

The ABCMR Decision Provided No Rationale for Rejecting Contrary Evidence

64. Adopting the conclusions of its in-house medical advisor, the ABCMR decision summarily concluded that Mr. Steen's osteoarthritis of the right hip was unfitting because the condition was worsening and Mr. Steen's "condition posed a significant risk to his health and the welfare of other Soldiers, particularly in deployed or austere environments." The ABCMR decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and was agency action without observance of procedure required by law for the reasons set forth below.

65. The ABCMR decision offered no explanation or rationale for why it adopted its own medical advisor's conclusion that continued service without functional activity limitations was a decided medical risk to Mr. Steen's health, but rejected or failed to find persuasive the contrary medical opinions of PA-C Voth and PA-C Kessel that the limitations were no longer required and their absence presented no medical risk. The ABCMR decision merely summarized the medical advisor's conclusions and adopted them without accounting for or explaining why it opted to discount the contrary evidence. Nor did the medical advisor's review

27

provide any justification or grounds for disregarding or rejecting the probative weight of the conclusions of Messrs. Voth and Kessel.  The ABCMR decision either failed to consider Mr. Voth's and Mr. Kessel's medical evidence or simply discounted it without explanation, either of which amounts to action that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or was without observance of procedure required by law. The ABCMR decision erroneously failed to furnish a rational connection between the unclear or conflicting facts regarding the nature and extent of the risk to Mr. Steen's health posed by continued service without functional activity limitations and the choice the decision made that such continued service was a decided medical risk.

The ABCMR Decision Failed to Resolve Reasonable Doubt in Favor of Fitness

66.  The ABCMR decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or was agency action without observance of procedure required by law, because the ABCMR disregarded and violated Army Reg. 635-40, ¶ 5-6.a., which mandated that if evidence of Mr. Steen's fitness was not clear, benefit of the doubt will be resolved in favor of fitness under the presumption that Mr. Steen desired to be found fit for duty.

67.  There was disputed evidence whether Mr. Steen's continued service without functional activity limitations posed a decided medical risk to his health. On the one hand, the ABCMR in-house medical advisor concluded the risk existed; on the other hand, PA-C Voth and PA-C Kessel concluded no such risk existed. Army Reg. 635-40, ¶ 5-6.a. required the ABCMR to resolve that uncertainty or

28

doubt in favor of finding Mr. Steen fit, which it failed to do.  The ABCMR decision also committed error when it failed to address or explain why Mr. Steen's non-frivolous argument regarding the applicability of the regulatory benefit of the doubt provision was not addressed or was disregarded.

68.  It is axiomatic that the ABCMR must comply with DoD and Army regulations.  The ABCMR decision's failure to comply with Army Reg. 635-40, ¶ 5-6.a was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or was agency action without observance of procedure required by law.  The ABCMR decision's violation of Army Reg. 635-40 prejudiced Mr. Steen because it resulted in an erroneous finding of unfitness inconsistent with applicable regulatory procedural requirements causing Mr. Steen to be unlawfully separated from the NDARNG.

#### The ABCMR Decision Erroneously Failed to Apply the Most Current Medical Assessment of Mr. Steen's Need for Functional Activity Limitations

69.  In assessing whether Mr. Steen's osteoarthritis necessitated functional activity limitations, the ABCMR decision erroneously relied on the status of Mr. Steen's osteoarthritis as of June 2021, rather than on the assessments by PA-C Voth and PA-C Kessel regarding the limitations Mr. Steen's osteoarthritis required in September 2023 and February 2024, dates closer to Mr. Steen's separation from the NDARNG effective March 31, 2024.  As adopted by the ABCMR decision, the medical advisor's conclusion that Mr. Steen's continued service posed a decided medical risk to his health was based on Mr. Steen's "load limiting" Profile issued on August 14, 2022, which the medical advisor said was required "to lessen symptoms

and to prolong the life of his native right hip as long as possible especially given his age." But the Profile was based exclusively on Dr. Noonan's assessment of Mr. Steen's hip condition as of June 21, 2021, and failed to reflect the updated medical assessments of Mr. Voth and Mr. Kessel that concluded no load limiting restrictions were required given the improvement of Mr. Steen's hip condition since 2021.

70. The ABCMR decision's reliance on the Profile reflecting the status of Mr. Steen's condition in June 2021 was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or was agency action without observance of procedure required by law. A military disability determination is a "snapshot in time" of the soldier's medical condition, necessitating consideration of the most current evidence of the medical condition and its effect on a soldier's ability to perform his military duties at the point when the disability decision is being made and up to the time of separation. For Mr. Steen that relevant snapshot in time was in 2023, when he had his Formal PEB hearing in October 2023, leading to his discharge from the NDARNG effective March 31, 2024, not his condition on June 21, 2021.

71. The medical advisor's assertion that there was evidence of worsening osteoarthritis in 2023 and 2024 did not cure the ABCMR decision's erroneous reliance on the Profile's June 2021 assessment of functional activity limitations. The radiological and other evidence cited by the medical advisor as showing worsening osteoarthritis was not tied to and had no demonstrated nexus with any functional activity limitations except by reference back to the outdated and

superseded Profile. Neither the ABCMR decision nor the medical advisor's review provided evidence or analysis explaining how Mr. Steen's condition in 2023 or thereafter required or was linked to specific functional activity limitations other than those reflected in the Profile based on the June 2021 assessment. The medical advisor's *post hoc* opinion regarding the progress of Mr. Steen's osteoarthritis was not a substitute for record evidence demonstrating the nature and extent of the functional activity limitations, if any, that were required in 2023 or 2024.

72. The ABCMR decision's and the medical advisor's reliance on purported functional limitations noted in a Department of Veterans Affairs ("VA") Compensation and Pension examination conducted in 2024, after Mr. Steen's separation from the NDARNG, was error because the VA assessment was not relevant to Mr. Steen's DoD fitness for duty determination. A DoD fitness determination and a VA disability evaluation interpret functional activity limitations very differently because they have a fundamentally different purpose or scope in each of the separate military or VA disability systems. The DoD focuses on whether a functional activity limitation prevents a service member from performing required military duties, while the VA evaluates how a functional activity limitation affects a veteran's ability to secure and maintain civilian employment.

73. The medical advisor offered no evidence to support the speculative "reasonable anticipation" that Mr. Steen's condition would "suffer greater/faster deterioration in the absence of a protective load bearing profile performing duties while [sic] CONUS [Continental United States] and even more so if exposed to the

31

increased physical demands associated with combat deployment." The medical advisor presented no evidence showing that Mr. Steen's continued service without functional activity limitations would cause his hip condition to deteriorate over and above the natural progression of the osteoarthritis identified and discounted as a potential medical risk to Mr. Steen's health by Messrs. Voth and Kessel. Army Reg. 635-40, ¶ 5-6.a. prohibits the speculative prediction of future outcomes outside the relevant "snapshot in time" of the disability determination up to separation offered by the medical advisor and adopted by the ABCMR decision. ("Findings will be made (and cited in the record of proceedings) on the basis of objective evidence in the record as distinguished from personal opinion, speculation, or conjecture."). It was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or was agency action without observance of procedure required by law for the ABCMR decision to adopt and rely upon prohibited conjecture or speculation regarding what possibly might happen to Mr. Steen at some unknown point in an uncertain future period of time.

74. The conclusion by the ABCMR decision and the medical advisor that Mr. Steen was unfit based on a "reasonable anticipation" that Mr. Steen's condition would "suffer greater/faster deterioration in the absence of a protective load bearing profile" was arbitrary and capricious as it wrongfully violated Army Directive 2024-01 (Army Fitness Determinations and Deployability), ¶ 4.a.(3). Their conclusions focused on whether Mr. Steen's osteoarthritis would be well-controlled in the future, rather than whether it was currently well-controlled. Army Directive 2024-01, ¶

32

4.a.(3) makes clear that among the fitness criteria that must be considered, it is the current risk to the soldier and others – the snapshot in time – that is dispositive, not a prophecy or a "reasonable anticipation" of an inchoate future risk. ("Is the Soldier's medical condition well controlled such that it is not *currently* a decided medical risk to the Soldier's health or the welfare of other Soldiers?") (emphasis added).

> The ABCMR Decision Offered No Support for its Conclusion that Continued <u>Service Represented a Medical Risk to the Health of Mr. Steen and Others</u>

75. The ABCMR decision and the medical advisor's medical review are devoid of any rational explanation or supporting evidence for their conclusions that Mr. Steen's osteoarthritis posed a decided medical risk to his health and the welfare of other soldiers, particularly in deployed or austere environments. Despite being a principal basis for the ABCMR decision's denial of relief, neither the ABCMR decision nor the medical advisor explained or identified any supporting evidence showing how Mr. Steen's osteoarthritis represented a risk to the welfare of other soldiers either in the United States or in a deployed environment. The ABCMR decision neither discussed, explained, nor identified any evidence demonstrating how Mr. Steen's osteoarthritis actively endangered, compromised, or overburdened other soldiers in his unit. The ABCMR's justification was a conclusory *ipse dixit* constituting arbitrary and capricious decision making. Similarly, the ABCMR decision failed to and could not claim that osteoarthritis was among the types of conditions that represent a risk to others, including high-risk psychiatric or psychological conditions, communicable or blood-borne diseases, a condition with an

33

unpredictable loss of consciousness or physical control, or a condition with a severe allergenic or environmental vulnerability.

76.  Neither the ABCMR decision nor the medical advisor provided any explanation or rationale that squared their conclusory determination that Mr. Steen's osteoarthritis was a risk to the welfare of others with the contrary evidence provided by Mr. Steen's military supervisors.  The testimonial comments of Mr. Steen's commanders, senior unit non-commissioned officers, and non-commissioned evaluation reports provided compelling and highly probative evidence that Mr. Steen represented no risk to himself or anyone else because his performance of duties and ability to deploy met or exceeded standards.  Army Reg. 635-40, ¶ 5-6.d.(1) and Army Directive 2024-01 (Army Fitness Determinations and Deployability), ¶ 4.a.(2) provide that statements by unit members are entitled to great probative weight because they "may provide better evidence than a clinical estimate by a physician of the Soldier's ability to perform their duties."  Yet, the ABCMR decision and the medical advisor ignored them, never explained why, and again justified the decision by conclusory *ipse dixt*.  The ABCMR decision erroneously relied on an arbitrary and capricious, conclusory determination regarding the risk posed to the welfare of others that leaves Mr. Steen and a court on judicial review scratching their heads as they speculate regarding the actual basis and reasons behind the ABCMR's decision.

77.  The ABCMR decision committed error by assuming unrestricted continued service represented a medical risk based on unlawful speculation without

34

any supporting evidence that Mr. Steen's "right hip condition would suffer greater/faster deterioration in the absence of a protective load bearing profile performing duties while [sic] CONUS and even more so if exposed to the increased physical demands associated with combat deployment."  The ABCMR decision offered no evidence to support or explain its conclusory contention that hip deterioration would be more aggravated or accelerated by a combat deployment compared with duties in the United States, to include identification of those duties or activities Mr. Steen would perform differently during a deployment than during domestic duties and how such differences could cause or result in more significant or faster deterioration of Mr. Steen's hip.

78.  The ABCMR decision was inconsistent with both the findings of the PEB and the Profile upon which the decision and the medical advisor relied in finding that continued service was a medical risk to Mr. Steen's health.  Contrary to the ABCMR decision, the PEB found that Mr. Steen was able to perform his military duties in the United States.  In addition, the Profile dated August 14, 2022 placed no functional limitation on Mr. Steen's deployability, as it did not indicate in Item 24.f. that Mr. Steen could not "live and function, without restrictions in any geographic or climatic area without worsening condition."  The ABCMR offered no explanation for these internal inconsistencies, which is the hallmark of an arbitrary and capricious agency action.

79.  Under the APA, this Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, and

35

[an] abuse of discretion or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).  Plaintiff is therefore entitled to the relief requested in this Complaint.

<u>**Prayer for Relief**</u>

80.  WHEREFORE, it is respectfully requested that this Court enter judgment against defendant and in favor of Plaintiff Mackenzie L. Steen and award the following relief:

a.  declare that Mr. Steen's discharge from the NDARNG and the ABCMR decision were arbitrary, capricious, and an abuse of discretion or otherwise not in accordance with law or were without observance of procedure required by law;

b.  vacate Mr. Steen's discharge from the NDARNG and the ABCMR decision;

c.  remand Plaintiff's case to defendant for referral to the ABCMR or another Army component consistent with the Court's decision and entry of judgment for a determination of his fitness as of March 31, 2024, to be made under the correct standards and procedures and by considering and addressing all relevant record evidence, including ordering defendant to ensure that the ABCMR or other Army component considers and addresses any evidence or argument related to the remand proceedings that Plaintiff may raise;

d.  retain jurisdiction over Plaintiff's case until defendant takes final action on remand and the parties advise the Court whether that final action on remand

36

afforded a satisfactory disposition of the case or further proceedings before the

Court are required to allow Plaintiff to challenge the final action;

e.  Award Plaintiff costs and attorney's fees; and

f. Grant such other relief as the Court deems just and proper.

The Law Offices of Scott W. MacKay, LLC

/s/  Scott W. MacKay
Scott W. MacKay
PO Box 295
Hebron, New Hampshire 03241
(603) 412-2598
swmackay76@gmail.com
Application for Admission *Pro Hac Vice*
Forthcoming

Date:  June 30, 2026                Attorney for Plaintiff Mackenzie L. Steen